1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARL ROBBINS, | ) | 1:07-cv-0333 -AWI WMW HC |
| | ) | |
| Petitioner, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER RE MOTION |
| vs. | ) | FOR DISMISSAL OF |
| | ) | PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| D. SMITH, Warden, | ) | |
| | ) | [Doc. 4] |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

Petitioner, a federal prisoner proceeding pro se, has filed an application for a petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pending before the court is

Respondent's motion to dismiss.  Petitioner has not opposed the motion.

**BACKGROUND**

Petitioner is currently in custody of the Bureau of Prisons ("BOP") at the United

States Prison at Atwater, located  in Atwater, California, pursuant to a judgment of the United

States District Court for the Eastern District of California.

On March 2, 2007, Petitioner filed the instant federal petition for writ of habeas

corpus in this Court.  Petitioner claims the BOP is unlawfully denying him consideration for

placement into a Residential Re-entry Center ("RRC").

**DISCUSSION**

A.    Standard of Review

        Writ of habeas corpus relief extends to a person in custody under the authority of the

United States.  See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal

prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2241(c)(3).  Petitioner's claims are proper under 28 U.S.C. §

2241 and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of

the execution of petitioner's sentence and not the fact of petitioner's conviction or sentence.

Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990) (stating that a challenge to the execution

of a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C.

§ 2241"); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir.1998) (*per curiam*)

(allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

        Further, Petitioner is challenging the execution of his sentence at the United States

Prison at Atwater,  which is within the Fresno Division of the Eastern District of California;

therefore, the Court has jurisdiction over this petition. See Brown v. United States, 610 F.2d

672, 677 (9th Cir. 1990).

B.    BOP Regulations Contradict United States Code Statutes

        As previously stated, Petitioner contends that BOP regulations which prevent him

from being considering for release to RRC until after he has served nine-tenths of his

sentence violate Title 18, Section 3621(b), of the United States Code. See Petition at 1-2.

        Title 18, of the United States Code, Section 3621(b) states:

                (b)  Place of imprisonment - - The Bureau of Prisons shall designate the place
                of the
        prisoner's imprisonment.  The Bureau may designate any available penal or
        correctional facility that meets minimum standards of health and habitability
        established by the Bureau, whether maintained by the Federal Government or
        otherwise and whether within or without the judicial district in which the person was

convicted, that the Bureau determines to be appropriate and suitable, considering --
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence - -
       (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
   (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

    In designating the place of imprisonment or making transfers under this subsection,
there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.  The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

Section 3624(c) states:

    (c) Pre-release custody - - the Bureau of Prisons shall, to the extent practicable, assure
that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The relevant BOP regulations state the following:

    (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of
discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

See 28 C.F.R. § 570.20(a).

Section 570.21 states:

    (a) The Bureau will designate inmates to community confinement only as part of
pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

    (b) We may exceed these time-frames only when specific Bureau programs allow
greater periods of community confinement, as provided by separate statutory authority

(for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

Prior to December 13, 2002, the BOP would occasionally allow prisoners to serve all or part of their imprisonment in an RRC.[1] Then, on December 13, 2002, the Office of Legal Counsel of the Department of Justice ("OLC") issued a legal opinion interpreting the interplay between §§ 3621(b) and 3624(c) of Title 18. The opinion held that § 3621(b) did not authorize the BOP to place an inmate in an RRC for the entire term of his sentence because community confinement did not constitute imprisonment. Id. The BOP consequently changed its procedure and limited RRC placements for prisoners to the final 10% of their sentences or six months, whichever was shorter.

However, in 2004, two Circuit Court of Appeals held that the 2002 BOP policy change was unlawful given that the plain language of § 3621(b) gave the BOP discretion to transfer an inmate to an RRC at *any time*. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004). In light of the opinions of Elwood and Goldings, on August 18, 2004, the BOP proposed new regulations "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." 69 Fed. Reg. 51, 213 (Aug. 18, 2004). Although the 2005 regulations acknowledged the BOP's general discretion to place an inmate at an RRC at any time, it limited such placement to the lesser of 10% of a prisoner's total sentence or six months, absent application of special statutory circumstances. 28 C.F.R. §§ 570.20, 570.21. The final rules were published on January 10, 2005, and became effective on February 14, 2005.

The question to be resolved here is whether the BOP's 2005 regulations are contrary

---

[1]The Court hereby takes judicial notice of Arcediano v. Wrigley, Case No. 1:06-CV-00780 AWI DLB HC. This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244 (9th Cir.1992); see also MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th cir. 1980) Arcediano is factually congruent with the instant case. Therefore, the Court's opinion in this case will be derived from the record developed in Arcediano.

1    to, or a permissible construction of, Section 3621(b).

2          Three Circuit Court of Appeals and several District Courts, including this Court, have

3    found the 2005 regulations to be contrary to Section 3621(b). <u>Woodall v. Federal Bureau of

4    Prisons</u>, 432 F.3d 235, (3rd Cir. 2005); <u>Fults v. Sanders</u>, 442 F.3d 1088 (8th Cir. 2006); Levine

5    v. Apker, 455 F.3d 71 (2d Cir. 2006); <u>Horn v. Ellis</u>, No. 06 CV-F-0006 OWW TAG HC;

6    2006 WL 1071959 (E.D. Cal. April 21, 2006)[2]; <u>Baker v. Willingham</u>, No. 3:04cv1923, 2005

7    WL 2276040 (D.Conn. Sept. 16, 2005); <u>Wiederhorn v. Gonzales</u>, No. 05-360-TC, 2005 WL

8    1113833 (D.Or. May 9, 2005); <u>United States v. Paige</u>, 369 F.Supp.2d 1257 (D. Mont. 2005);

9    <u>Drew v. Menifee</u>, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005); <u>Pimentel v.

10   Gonzales</u>, 367 F.Supp.2d 365 (E.D.N.Y. 2005); <u>Cook v. Gonzales</u>, No. 05-09-AS, 2005 WL

11   773956 (D.Or. Apr. 5, 2005); <u>Crowley v. Fed. Bureau of Prisons</u>, 312 F.Supp.2d 453

12   (S.D.N.Y. 2004).  The Ninth Circuit Court of Appeals has not addressed the issue.

13         In reviewing an agency's construction of a statute, courts apply the test set forth in

14   <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  The

15   Court looks first to the text of the statute to determine whether Congress has spoken directly

16   on the issue. <u>Contract Management, Inc. v. Rumsfeld</u>, 434 F.3d 1145, 1146-47 & n.2 (9th Cir.

17   2006).  If the intent of Congress is clear from the text of the statute, that is the end of the

18   inquiry, the Court must follow the expressed intent of Congress. <u>Id</u>. at 1146-47, <u>citing

19   Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43, 104 S.Ct.

20   2778, 81 L.Ed.2d 694 (1984). If, however, the statute is silent or ambiguous on the specific

21   issue, the Court must determine whether the agency's interpretation is based on a permissible

22   construction of the statute. <u>Id</u>. at 1147. If so, the Court defers to the agency's determination.

23

24   _____

        [2]  In the April 21, 2006, order, Judge Wanger directed Respondent to show cause why the petition should
25   not be granted, and directed Respondent to immediately consider whether Petitioner should be transferred to a CCC,
     without reference to the BOP's 2002 and 2005 policies, including 28 C.F.R. §§ 570.20-21.  Respondent filed a
26   response to the order to show cause on May 9, 2006, arguing that the Court's holding is contrary to the reasoning in
     <u>United States v. Latimer</u>, 991 F.2d 1509 (9th Cir. 1993).  The Court has not yet issued a ruling on Respondent's
27   response to the order to show cause.

28                                                5

Id.

As found by the Second, Third, and Eighth Circuit Court of Appeals, this Court finds that the plain text of the statute, as well as the legislative history do not support the BOP's regulations to limit RRC placement to only those inmates serving the last 10% of their sentence. As stated in § 3624(c), Congress's intent to release prisoners to an RRC is to facilitate their re-entry into the community. Congress has unambiguously set forth five factors for the BOP to consider when making its determination to release a prisoner. 18 U.S.C. § 3621(b). Specifically, Section 3621(b) distinguishes between the BOP's duty to designate a place of imprisonment ("shall designate") and its broad discretion in determining the specific place of imprisonment ("may designate any available penal or correctional facility"). Levine, 455 F.3d at 80. The statute not only provides discretion to the BOP for placement, but provides a specific list of five factors the BOP must consider prior to placement. Id. Given the clear text of the statute and Congress's unequivocal intent for the BOP to consider all five factors, the current BOP regulation is invalid because "these factors cannot be fully considered because the amount of time an inmate may spend in a CCC is categorically limited to the lesser of six months or ten percent of a sentence without regard to individualized circumstances." Woodall, 432 F.3d 235, 245; Levine, 455 F.3d at 80-82; Fults, 442 F.3d at 1091. Further, the legislative history supports the finding that consideration of the five factors are mandatory, although non-exclusive. As set forth in Levine v. Apker, 455 F.3d 71, the Second Circuit stated:

> Accompanying § 3621(b), the Senate Judiciary Committee issued a report speaking directly to the nature of the statutory factors. . . . The report stated that '[i]n determining the availability or suitability of the facility selected, the Bureau [is] specifically required to consider such factors as [those listed in § 3621(b)],' and that '[a]fter considering these factors,' the BOP may designate a place of imprisonment or enact an inmate transfer. S.Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25; see also Woodall, 432 F.3d at 245-46 (quoting same). The report disavows any restriction on the BOP's exercise of discretion, but rather states that it 'intends simply to set forth the appropriate factors that the Bureau should consider in making the designations.' Id. By 'specifically requir[ing]' the BOP to consider the listed factors before it makes placements and expressing intent to 'set forth the

6

appropriate factors' to be considered, the report underscores what the textual language itself makes clear: that the enumerated factors are mandatory. (footnote omitted).

Levine, at 82.

Thus, although the BOP has discretion to refuse to place an inmate in a correctional facility, the exercise of discretion must be based at least in part on the specific factors outlined in § 3621(b), and the BOP regulations set forth in §§ 570.20 and 570.21 simply ignore those factors. As such, the regulations contradict, rather than interpret, § 3621(b), and no deference is owed.

In Arcediano, Respondent argued that the language of § 3624(c) states "unambiguously that prisoners have no right to be considered for an RRC placement until they have finished 90% of their sentence." See Arcediano v. Wrigley, Case No. 1:06-CV-00780 AWI DLB HC. However, Respondent fails to recognize that by creating a blanket rule against transfer until the inmate has served 10% of his sentence, the BOP has failed to consider the mandatory factors set forth in § 3621(b). Woodall, 432 F.3d at 250. As stated in Woodall, "§ 3624 does not determine when the BOP should *consider* CCC placement, but when it must *provide* it." Id. (Emphasis in original.) "The statute requires the BOP not just to consider, but to actually *place* an inmate in a CCC or like facility, during the last ten percent or six months of the sentence, when that is possible." Id. (Emphasis in original.)

Three of the five factors set forth in § 3621(b)- the nature and circumstances of a prisoner's offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence, require specific analysis to each individual prisoner. Levine, 455 F.3d at 86; Woodall, 432 F.3d at 247; Fults, 442 F.3d at 1091. Yet, under the 2005 regulations, these considerations cannot be fully considered. As illustrated by the Court in Woodall, which stated:

> Worthy of special mention is the recommendation of the sentencing judge. United States District Judges take their sentencing responsibilities very seriously and are familiar with the various BOP institutions and programs. Their recommendations as to the execution of sentences are carefully thought out and are important to them. The significance of this aspect of the sentencing process is highlighted by the acknowledgment of the regional counsel of the BOP at oral argument that the BOP follows judicial recommendations in approximately 85-90 percent of all cases. Here, however, the requirement that the BOP consider a sentencing judge's recommendation cannot be satisfied without an individualized, case-by-case inquiry that is

7

1    impossible under the regulations.

2 Woodall, 432 F.3d at 247.  In Woodall, the Court recognized that the sentencing court had

3 recommended the petitioner spend six months at a halfway house placement, but under the

4 current regulations, that recommendation could not be fully considered. Id. at 248.  "In fact,

5 *no* recommendation of a CCC placement exceeding six months or ten percent of a sentence

6 can be considered." Id. Although the BOP can consider the amount of time the prisoner has

7 actually served in making placements, that factor cannot be the single consideration, which is

8 precisely what the 2005 regulations have done.

9    In Arcediano, Respondent alleged his view is supported by the Ninth Circuit's

10 decision in United States v. Latimer, 991 F.2d 1509, 1514-15 (9th Cir. 1993).  In Latimer, the

11 Ninth Circuit held that the language of the Sentencing Guidelines, specifically section

12 4A1.2(e)(1), did not define incarceration to include detention solely in a community

13 treatment center or halfway house.  Latimer, 991 F.2d at 1514.  Respondent argued that the

14 Office of Legal Counsel's December 13, 2002, opinion used similar reasoning in determining

15 that the guidelines did not permit the BOP to substitute confinement in an RRC for a term of

16 imprisonment.  In Arcediano, this Court did not find Respondent's argument persuasive. As

17 Respondent acknowledged, the case does not involve a prisoner who was directly placed into

18 an RRC at the outset of his sentence.  Thus, this Court determined it need not reach

19 Respondent's argument.

20    Respondent further argued that the case is similar to Lopez v. Davis, 531 U.S. 230

21 (2001), which addressed § 3621(e)(2)(B), a different subsection.  In Lopez, the Supreme

22 Court analyzed and upheld a BOP regulation that categorically denied early release to certain

23 inmates after completion of a drug rehabilitation program, who would have otherwise been

24 released under the terms of the statute.  Lopez, 531 U.S. at 238.  The statute at issue there, 18

25 U.S.C. § 3621(e)(2)(B), stated that the BOP may reduce the prison term of an inmate who

26 was convicted of a "nonviolent offense" and had successfully completed a substance abuse

27

28    8

program. Id. at 232.  The BOP's regulation interpreting that statute categorically denied early release to prisoners who had been convicted of a felony involving "the carrying, possession, or use of a firearm."  Id., quoting 28 C.F.R. § 550.58(a)(1)(vi)(B)).  The Supreme Court held that the BOP had properly exercised its discretion by furthering Congress's intent to exclude certain violent inmates from consideration for pre-release. Id.        Respondent reasoned that "[j]ust as § 3621(e)(2)(B) vests broad discretion in the BOP to determine which individuals are candidates for early release, so too § 3621(b) gives the BOP broad discretion in deciding where to designate inmates.  The BOP's decision to restrict RRC placements to prisoners serving the last 10% of their sentences is a categorical expression of the BOP's discretion that does not differ fundamentally from the BOP's exercise of the same discretion under § 3621(e)(2)(B)."  See Arcediano, 1:06-CV-00780 AWI DLB HC.  The BOP undoubtedly may exercise discretion under § 3621(b), however, it is not free to disregard the specific factors set forth by Congress when doing so.  Although Respondent argued that "the categorical exercise of discretion in Lopez used factors such as sentencing enhancements which were not determinative of being 'violent' under some circuits" and therefore broadened the definition, this argument overlooks the fact that the statute at issue there did not specifically include a set of factors to be considered by the BOP in making its determination of whether an offense could be classified as "violent."   In Lopez, the BOP had simply filled in a statutory gap, whereas here, no such claim can be made because the BOP has specifically excluded from consideration the very factors that Congress outlined for consideration.

Based on the foregoing, the Court finds that the BOP regulations contradict, rather than interpret, Congress's intent in enacting 18 U.S.C. §§ 3621(b) and 3624(c).

In his motion to dismiss, Respondent informs the court that the BOP has evaluated Petitioner "without reference to the time constraints imposed by 28 CFR 570.20-21 or the 2002 and 2005 Community Corrections Policies."  Respondent argues that because the BOP

has given Petitioner the review he requested, this petition has become moot.

The case or controversy requirement of Article III of the United States  Constitution deprives the court of jurisdiction to hear moot cases. <u>Iron Arrow Honor Soc'y v. Heckler</u>, 464 U.S. 67, 70 104 S.Ct. 373, 374-75 (1983); <u>NAACP., Western Region v. City of Richmond</u>, 743 F.2d 1346, 1352 (9th Cir. 1984).  A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Murphy v. Hunt</u>, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183 (1984).  The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them" <u>North Carolina v. Rice</u>, 404 U.S. 244, 246, 92 S.Ct. 402, 406 (1971) *per curiam*, *quoting* <u>Aetna Life Ins. Co. v. Hayworth</u>, 300 U.S. 227, 240-241, 57 S.Ct. 461, 463-464 (1937).  To satisfy the Article III case or controversy requirement, a litigant "must have suffered some actual injury that can be redressed by a favorable judicial decision." <u>Iron Arrow</u>, 464 U.S. at 70, 104 S.Ct. at 375; <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 38, 96 S.Ct. 1617, 1924 (1976); <u>NAACP, Western Region</u>, 743 F.2d at 1353.

In this case, the court agrees with Respondent that because the BOP has given him the assessment he seeks, this petition has become moot.

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1)      Respondent's motion to dismiss is GRANTED;

2)      This petition for writ of habeas corpus is DISMISSED as moot; and

3)      The Clerk of the Court is directed to close this case and enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:   February 25, 2008**          _____/s/ Anthony W. Ishii_____
UNITED STATES DISTRICT JUDGE

10